NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251284-U

NO. 4-25-1284

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CYNTHIA RUIZ, | ) | No. 25CF165 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Steigmann and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the eight-year prison sentence of defendant, who
pleaded guilty to unlawful possession with the intent to deliver more than 5,000
grams of a substance containing cannabis, but remanded to allow defendant to file
an application for a waiver of assessments.

¶ 2    Defendant, Cynthia Ruiz, pleaded guilty, pursuant to an open plea, to unlawful

possession with the intent to deliver more than 5,000 grams of a substance containing cannabis

(720 ILCS 550/5(g) (West 2024)). Following a sentencing hearing, the trial court sentenced

defendant to eight years in prison. Defendant was also ordered to pay fines, fees, and assessments,

including a street value fine of $184,000. Defendant appeals, arguing that her sentence was

excessive and that her counsel was ineffective for failing to file an application for a waiver of

assessments. We affirm defendant's sentence but remand to allow defendant to file an application

for a waiver of assessments.

¶ 3                                    I. BACKGROUND

¶ 4            On February 19, 2025, Illinois State Police witnessed a traffic violation and conducted a traffic stop of defendant's vehicle, which was traveling on Interstate 55 in McLean County. While discussing the warning citation, a canine officer arrived, and his dog conducted a free-air sniff of the pickup truck defendant was driving. The canine gave a positive alert for the presence of drugs, and a search ensued. Police recovered from the truck bed two large trash bags that contained a large amount of cannabis that was individually packaged for sale. A field test indicated the substance tested positive for the presence of cannabis. The total weight of the cannabis was 15,411.7 grams, or just under 34 pounds.

¶ 5            According to the State, "[a] conservative estimate of the wholesale value of the *** cannabis, based on $2,000 per pound, would be $68,000." "A conservative estimate of the street value fine, *i.e.* what it would be worth if sold on the streets, would be $12 per gram, or about $184,000."

¶ 6            A notebook was found in the cab of the truck that appeared to be a drug ledger. It contained names and addresses with weights and prices. According to the ledger, it appeared that defendant had "already dropped off 26 pounds of cannabis in the Chicago area."

¶ 7            On February 20, 2025, the State filed a petition to deny pretrial release. A hearing on that petition was held the same day. The trial court granted the petition.

¶ 8            On February 26, 2025, a grand jury indicted defendant on charges of cannabis trafficking (720 ILCS 550/5.1(a) (West 2024)), unlawful possession of cannabis with the intent to deliver (720 ILCS 550/5(g) (West 2024)), and unlawful possession of cannabis (720 ILCS 550/4(g) (West 2024)). Each count alleged that defendant possessed more than 5,000 grams of a substance containing cannabis.

¶ 9        On June 27, 2025, the parties entered into a plea agreement. Pursuant to the agreement, defendant pleaded guilty to unlawful possession with the intent to deliver more than 5,000 grams of a substance containing cannabis, a Class X felony. In exchange for defendant's plea, the State dismissed the other two counts against her. There was no agreement made as to defendant's sentence. The State provided the following factual basis for the guilty plea:

> "If called to trial the state would produce evidence and call witnesses that would show on February 19th of 2025 a trooper with the Illinois State Police initiated a traffic stop on a vehicle driven by this defendant on I-55 near mile marker 146 within McLean County after observing a traffic violation.
>
> During the course of that stop a canine was summoned to the scene. After a positive alert by the canine a search ensued of that vehicle. Located under a bed liner of the truck the defendant was driving were two large black trash bags that contained a large amount of suspected cannabis. That cannabis was individually packaged for sale in clear, vacuum-sealed baggies. The total weight of the bags was approximately 15,400 grams, just slightly under 34 pounds, and tested positive for the presence of cannabis."

¶ 10        Defendant stipulated that the State had witnesses who would testify accordingly. After defendant pleaded guilty to possession of cannabis with the intent to deliver, the trial court ordered a presentence investigation report (PSI) to be prepared and set a date for the sentencing hearing.

¶ 11        The sentencing hearing took place on August 29, 2025. The trial court stated that it had received and reviewed the PSI filed on August 26, 2025. According to the PSI, defendant was 35 years old. She was married and resided with her husband; four children, ages 4, 6, 17, and 22;

and three nieces, ages 13, 15, and 17, over whom she had guardianship.

¶ 12      The PSI revealed that defendant's crimes included possession of a controlled substance, cannabidiol, on April 15, 2024, in Henry County, Iowa. Defendant was on 12 months of unsupervised probation for that offense. In addition, defendant also had several driving convictions and was given court supervision for the offense of "false pretense over $1000 or con game" in Tulsa, Oklahoma, on December 8, 2023. According to the PSI, defendant's two-year sentence for the Oklahoma crime was deferred, but defendant was placed on supervision and ordered to pay restitution, fines, and fees.

¶ 13      Defendant reported being sexually abused by her stepfather from age 8 to age 15. Her firstborn child was born as a result of the abuse. Her sister was also a victim of the sexual abuse and became addicted to drugs. Defendant was given guardianship of her sister's daughters approximately six years ago. Defendant's husband is 38 years old, and he and defendant have been together for 13 years.

¶ 14      Defendant reported that prior to her arrest, her entire family, including herself, her husband, her four children, and her three nieces, lived in a house her husband built in 2019 in Bixby, Oklahoma. However, in late 2024, the family was evicted from their home and moved to a new address in Tulsa, Oklahoma. She reported that her 17-year-old son recently " 'ran away from home' " and was staying with her brother.

¶ 15      According to defendant, her husband has health issues. He recently had a kidney removed, and his remaining kidney has only 25% of its function. Defendant "indicated her husband did not have health insurance, and the family was struggling financially." She said she sold cannabis to earn money and that her husband did not know about it. She said, " 'It wasn't worth it.' "

¶ 16        While incarcerated, defendant experienced some mental health issues and was diagnosed with "adjustment disorder, with depressed mood and anxiety." She was given a differential diagnosis of post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. Defendant reported using cannabis daily prior to her arrest but denied any other substance abuse. However, her McLean County Detention Facility records indicated that she reported using methamphetamines two to three times a week and last used on the day of her arrest. Additionally, on February 22, 2025, she reported using methamphetamine " 'when driving.' " While incarcerated in the McLean County Detention Facility, defendant attended two Alcoholics Anonymous classes and three Celebrate Recovery classes.

¶ 17        Defendant described herself as a " 'hard worker' " who has been employed all her life. She and her husband started their construction company in October 2020. She described herself as the " 'CEO' " and said she was responsible for the financial side of the business. She indicated that the company lost " 'a lot' " of business since her incarceration. Prior to her arrest, the company employed six crew members, but it now employs only three. She estimated that the company earns $4,000 per month. However, in the pretrial investigation report filed on February 20, 2025, defendant indicated that her monthly income was $6,000.

¶ 18        Defendant reported $14,000 in her husband's medical bills as her only debt. While incarcerated, defendant worked three different jobs and was found to be in violation of six minor rules and two major rules. In jail, defendant attended several classes, including a GED preparation class.

¶ 19        At the sentencing hearing, the State did not present any additional information in aggravation, aside from the probable cause proffer. In mitigation, defendant tendered several documents as exhibits, which the trial court admitted. These included (1) a copy of defendant's

husband's medical bills, (2) documents related to the foreclosure of defendant's home, (3) a document showing that defendant received a suspended sentence for her Iowa offense (4) a newspaper article related to the Oklahoma "false pretense" scheme that led to defendant's deferred sentence for that crime, and (5) documents with information about how defendant spent her time in jail, such as the classes she completed and the hours she worked at her various jobs.

¶ 20         The State requested that defendant receive a "mid-range" prison sentence of 12 years, along with a $75 fine and a $184,000 street value fine. Defense counsel asked the trial court to sentence defendant, based on her circumstances, to less than the mandatory minimum, specifically, probation or one year in prison. Counsel argued that defendant's upbringing was very traumatic, as she was abused by her stepfather and had his child at the age of 13. Nevertheless, she was taking care of that child plus three others of her own and three of her sister's daughters. Defense counsel pointed out that one month before this incident, defendant's husband had major medical problems, no health insurance, and faced significant financial debt. Counsel argued that defendant was selling drugs because she was desperate. Counsel explained that defendant was not the mastermind behind the unlawful operation that led to her Oklahoma "false pretense" offense but happened to work at the law firm that was, which "is the reason she got the deferred sentence that she did."

¶ 21         Defendant made a statement in allocution, stating that her children were her "whole world." She explained that being in jail was not only hard on her but "heartbreaking" for her children. She promised to "never do this again" and begged to go home to her children. She stated that she sold cannabis because she was "stressed" due to medical bills and being evicted from her home and "didn't know what to do." She said, with respect to her "other case in Oklahoma, [she] was just following directions from [her] boss" because she "didn't want to lose [her] job."

Defendant asked for "one more opportunity" and said, "[Y]ou'll never hear from me again."

¶ 22     The trial court stated that it considered the PSI, the evidence and arguments presented by the parties, and all factors in mitigation and aggravation. The court stated that it considered "the seriousness of the offense and the objective of restoring [defendant] to useful citizenship." The court also considered "the defendant's history, character and rehabilitative potential, along with the seriousness of the offense, the need to protect society and the need for deterrence and punishment." The court stated that it "weighed the defendant's credibility, her demeanor, general moral character, mental capacity and *** social environment and habits and age." The court recognized that defendant "had a very difficult upbringing," as "[s]he was subjected to abuse at an early age from someone that should be a trusted family member." The court also noted that from a young age, defendant took on the responsibility of her own children, as well as her sister's children. The court noted that defendant had been "employed relatively consistently." The court believed that defendant had "a relatively minor role" in the Oklahoma "false pretense" operation, which was reflected by her deferred sentence. The court also noted that defendant was not "totally truthful" when she denied using illicit substances other than cannabis and alcohol because she went through withdrawal symptoms from methamphetamine use when she reported to jail and said she had used methamphetamine while driving. The court also considered the amount of cannabis in defendant's possession, which far exceeded the 5,000 grams necessary to qualify for the Class X felony offense.

¶ 23     The trial court believed that a period of imprisonment was "necessary for the protection of the public" and that a "community-based sentence" would "deprecate the seriousness of the offense and be inconsistent with the ends of justice." Thus, the court sentenced defendant to eight years in prison.

¶ 24　　　　　On September 2, 2025, defendant filed a motion to reconsider her sentence, arguing that the trial court's sentence was excessive under the facts and circumstances of the case because (1) the court did not consider or give sufficient weight to the statutory mitigating factors applicable to defendant, (2) defendant did not cause or threaten serious harm since many states, including Oklahoma and Illinois, have decriminalized or legalized cannabis use, and (3) the court did not give sufficient weight to the detrimental impact of a prison sentence on her dependents.

¶ 25　　　　　The trial court held a hearing on the motion on October 31, 2025. Defense counsel argued that the court did not give sufficient weight to defendant's rehabilitative potential, her character, and the fact that she learned from her mistakes. Defense counsel asked the court to reduce defendant's sentence to the statutory minimum of six years. The State argued that the sentence imposed was "appropriate."

¶ 26　　　　　The trial court stated it had "a good recollection of this case in its entirety." The court further stated: "I specifically recall the sentencing hearing, and all of the factors that [defense counsel] has argued today she also argued at the sentencing hearing, and the Court considered all of those factors." The court admitted this was a "sad case as far as—as far as [defendant's] prior history." The court stated: "She has suffered a great deal and stepped up in other regards during her life as it relates to her sister's children." However, the court stated that it "weighed all the appropriate factors and considered all the appropriate factors giving them the appropriate weight" and believed that it imposed the appropriate sentence. Hence, the court denied defendant's motion to reconsider her sentence.

¶ 27　　　　　This appeal followed.

¶ 28　　　　　　　　　　　　　　I. ANALYSIS

¶ 29　　　　　　　　　　　　　　　A. Sentence

- 8 -

¶ 30     Defendant first argues that the trial court abused its discretion in sentencing her to eight years in prison because the court failed to consider "substantial mitigating evidence and consider the goal of rehabilitation." The State first responds that defendant forfeited her sentencing argument by failing to make the same argument in her motion to reconsider her sentence. Alternatively, the State argues that the sentence was proper.

¶ 31                                    1. *Forfeiture*

¶ 32     "Generally, to preserve a sentencing issue for appeal, a defendant must raise the issue in the trial court, including through a written motion to reconsider the sentence." *People v. Richards*, 2021 IL App (1st) 192154, ¶ 11. When an issue is raised in a motion to reconsider, it is properly before the appellate court. See *People v. Heider*, 231 Ill. 2d 1, 18 (2008).

¶ 33     In her motion to reconsider her sentence, defendant raised the same arguments that she raises on appeal, that the trial court's sentence was excessive because the court (1) did not consider or give sufficient weight to the statutory mitigating factors applicable to her, (2) did not give sufficient weight to her background, character, circumstances, and potential for rehabilitation, and (3) did not give sufficient weight to the impact prison will have on her dependents. While defendant's appellate brief expanded on many of these arguments, they are the same arguments that defendant made in her motion to reconsider her sentence. Therefore, defendant's sentencing argument was preserved, and we will review it on appeal.

¶ 34                                 2. *Excessive Sentence*

¶ 35     Illinois courts have long recognized that the imposition of a sentence is left to the sound discretion of the trial court and will not be altered upon review absent an abuse of that discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The court's decisions regarding sentencing are entitled to great deference and weight. *Perruquet*, 68 Ill. 2d at 154.

¶ 36        Sentences are presumed to be proper. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 28. When a sentence falls within the statutorily prescribed range, it is not excessive or an abuse of discretion unless it greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Etherton*, 2017 IL App (5th) 140427, ¶ 28. "The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and gives sufficient consideration to the defendant's rehabilitative potential." *Etherton*, 2017 IL App (5th) 140427, ¶ 28. The seriousness of the offense is one of the most important factors that the court must consider. *Etherton*, 2017 IL App (5th) 140427, ¶ 28.

¶ 37        If mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the trial court took that into consideration, absent evidence to the contrary. *Etherton*, 2017 IL App (5th) 140427, ¶ 29. The presence of mitigating factors does not require the court to impose the minimum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. "The trial court is not required to recite or assign a value to each factor presented at the sentencing hearing." *Etherton*, 2017 IL App (5th) 140427, ¶ 29. The defendant bears the burden of affirmatively establishing that the sentence was based on improper considerations, "and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper." *Etherton*, 2017 IL App (5th) 140427, ¶ 29.

¶ 38        Applying these principles to the instant case, we cannot say the trial court's sentence of eight years in prison was excessive. Defendant pleaded guilty to a Class X felony, for which the sentencing range was 6 to 30 years in prison. See 730 ILCS 5/5-4.5-25(a) (West 2024). While defendant's attorney argued at the sentencing hearing for a downward departure from the six-year minimum, our supreme court recently determined that no such departure is available for the offense of possession with the intent to deliver. See *People v. Hoffman*, 2025 IL 130344, ¶¶ 43-

45. Thus, the sentence imposed by the court was only two years more than the minimum six-year sentence for the Class X felony defendant committed.

¶ 39    Defendant contends that the only factor the trial court focused on in sentencing her was the large amount of cannabis she possessed. However, a review of the record refutes that contention. In sentencing defendant, the court specifically mentioned several mitigating factors in defendant's favor, such as her "very difficult upbringing," that she was responsible for raising not only her own children but also her sister's daughters, and that she was consistently employed. Despite the mitigating factors in defendant's favor, the court found that a sentence of two years above the minimum sentence was "necessary for the protection of the public."

¶ 40    Defendant cites *People v. Bigham*, 226 Ill. App. 3d 1041, 1049 (1992), for the proposition that the sentencing court must not only consider rehabilitation but "must also act on it as an objective of the sentence." In *Bigham*, the defendant was sentenced to 60 years in prison for murder. *Bigham*, 226 Ill. App. 3d at 1043. The reviewing court vacated the defendant's sentence, finding that the defendant had "rehabilitative potential which would not be well served by the excessive length of his sentence." *Bigham*, 226 Ill. App. 3d at 1049. Here, defendant's sentence of eight years in prison, just two years more than the statutory minimum, was not an excessive sentence and did take into account her rehabilitative potential. Thus, *Bigham* is not controlling.

¶ 41    Defendant seems to suggest that the only appropriate sentence for her that would not be an abuse of discretion was the minimum statutory prison term of six years because of her rehabilitative potential and other mitigating factors. We disagree. The presence of mitigating factors does not require the trial court to impose the minimum sentence. See *Harmon*, 2015 IL App (1st) 122345, ¶ 123. Here, the court explained that it reviewed all the mitigating factors, including rehabilitation, or "the objective of restoring the offender to useful citizenship," and

determined that an eight-year prison sentence was appropriate. We find the court's sentence was not excessive or an abuse of discretion.

¶ 42                                      B. Waiver of Assessments

¶ 43        Defendant also argues that her counsel was ineffective for failing to file an application for a waiver of assessments because "the record contains substantial evidence showing [she] would probably qualify for a waiver." The State responds that this claim must be raised by filing a motion under Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024) in the trial court.

¶ 44        A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant can demonstrate ineffective assistance of counsel by showing that "(1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 687).

¶ 45        Section 124A-20(b) of the Code of Criminal Procedure of 1963 provides that a defendant may apply for a waiver of assessments no later than 30 days after his or her sentencing. 725 ILCS 5/124A-20(b) (West 2024).

> " 'Assessments' means any costs imposed on a criminal defendant under Article 15 of the Criminal and Traffic Assessment Act [(705 ILCS 135/art. 15 (West 2024))], but does not include violation of the Illinois Vehicle Code [(625 ILCS 5/1-100 *et seq.* (West 2024))] assessments except in a county having a population of more than 3,000,000." 725 ILCS 5/124A-20(a) (West 2024).

A street value fine is an "assessment," as it is imposed under Article 15 of the Criminal and Traffic

Assessment Act. See 705 ILCS 135/15-70(6) (West 2024).

¶ 46         "If the court finds that the applicant is an indigent person, the court shall grant the applicant a full assessment waiver exempting him or her from the payment of any assessments." 725 ILCS 5/124A-20(b)(1) (West 2024). "Indigent person" includes any person whose "available personal income is 200% or less of the current poverty level." 725 ILCS 5/124A-20(a)(2) (West 2024). " 'Poverty level' means the current poverty level as established by the United States Department of Health and Human Services." 725 ILCS 5/124A-20(a) (West 2024). Illinois Supreme Court Rule 404 (eff. Sept. 1, 2023) sets forth the procedure for applying for a waiver of assessments.

¶ 47         Excluding defendant's oldest daughter, who is 22 years old, and defendant's 17-year-old son, who went to live with other relatives, defendant has a family of seven. The 2025 poverty guidelines for a family of seven was $48,650. See 90 Fed. Reg. 5917-01 (Jan. 17, 2025); *2025 Poverty Guidelines for the 48 Contiguous States and the District of Columbia,* https://www.federalregister.gov/documents/2025/01/17/2025-annual-updates-of-the-hhs-poverty-guidelines (last visited 6/23/26). According to the PSI and the pretrial investigation report, defendant earned either $4,000 or $6,000 per month, amounting to $48,000 or $72,000 per year, respectively. Both of those amounts fall well below the "indigent" standard of $97,300 for a family of seven. Thus, defendant was likely an "indigent person" and statutorily eligible for a waiver of the assessments imposed for her felony conviction. See 725 ILCS 5/124A-20(a)(2), (b) (West 2024).

¶ 48         Defense counsel should have filed an application for a waiver of defendant's felony assessments pursuant to Rule 404. See *People v. Fields*, 2026 IL App (4th) 250109-U, ¶ 99; *People v. Chase*, 2025 IL App (4th) 230407-U, ¶ 89. However, counsel failed to do so. Defense counsel

performed deficiently by failing to timely file an application for a waiver of criminal assessments for defendant, and counsel's failure prejudiced defendant because there is a reasonable probability that the fees imposed against her would have been waived. See *Fields*, 2026 IL App (4th) 250109-U, ¶ 99; *People v. Glas*, 2025 IL App (4th) 241199-U, ¶¶ 34-35; *Chase*, 2025 IL App (4th) 230407-U, ¶ 90.

¶ 49        The State contends that defendant's claim must be raised in the trial court under Illinois Supreme Court Rule 472(a)(1) (eff. Feb. 1, 2024), which requires claims of certain sentencing errors, including "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs," to be raised for the first time in the trial court. We disagree.

¶ 50        Defendant does not assert that the trial court committed any error in the imposition or calculation of fines, fees, assessments, and costs. See *People v. Richmond*, 2026 IL App (4th) 250858-U, ¶ 90. Instead, she contends that her counsel failed to do something she was required to do. See *Richmond*, 2026 IL App (4th) 250858-U, ¶ 90. "Because the alleged (and actual) error is an omission of counsel, and not an error by the court, Rule 472 does not apply." *People v. Yarber*, 2026 IL App (4th) 250294-U, ¶ 72.

¶ 51        We agree with the reasoning of *Richmond* and *Yarber* that Rule 472 does not apply because the error is not one made by the trial court, but by counsel. See *Yarber*, 2026 IL App (4th) 250294-U, ¶¶ 72-73. Our position is further supported by many decisions from this court where we remanded to allow the filing of a certificate for a waiver of assessments with no mention of Rule 472. See, *e.g.*, *Fields*, 2026 IL App (4th) 250109-U, ¶ 99; *People v. DeHart*, 2025 IL App (4th) 231554-U, ¶ 132; *Glas*, 2025 IL App (4th) 241199-U, ¶ 35; *People v. Hoskins*, 2025 IL App (4th) 240991, ¶ 84; *People v. Durham*, 2025 IL App (4th) 241284-U, ¶ 15; *Chase*, 2025 IL App (4th) 230407-U, ¶ 90.

¶ 52    Finally, we note that the supreme court has granted leave to appeal in *People v. Nibbelin*, 2025 IL App (4th) 240446-U, *pet. for leave to appeal granted*, No. 131825 (entered Sept. 24, 2025). Until the supreme court provides a definitive answer as to whether Rule 472 applies in these cases, we will continue to adhere to our opinion that Rule 472 does not apply when counsel deficiently fails to file an application for a waiver of assessments. Thus, we remand the case to the trial court to allow defendant to file an application for a waiver of assessments pursuant to Rule 404. See *Glas*, 2025 IL App (4th) 241199-U, ¶ 35; *Chase*, 2025 IL App (4th) 230407-U, ¶ 90.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the trial court's sentence and remand to provide defendant an opportunity to file an application for a waiver of assessments.

¶ 55    Affirmed and remanded with directions.